No. 20-5221

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

JASON B. LEE,

*Plaintiff-Appellant,*

v.

JEFFREY ROSEN,

*Defendant-Appellee.*

_____

On Appeal from the United States District Court
for the District of Columbia, No. 19-cv-2284 (Hon. Dabney L. Friedrich)

## BRIEF OF AMICUS CURIAE REPORTERS COMMITTEE FOR
## FREEDOM OF THE PRESS IN SUPPORT OF NEITHER PARTY

Bruce D. Brown
*Counsel of Record*
Katie Townsend
Gabe Rottman
Mailyn Fidler*
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th Street NW, Suite 1020
Washington, D.C. 20005
Tel: (202) 795-9300
Fax: (202) 795-9310
bbrown@rcfp.org
*Of counsel*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), amicus certifies as follows:

A.     <u>Parties and amicus curiae</u>

Except for the following amicus, all parties, intervenors, and amici that appeared before the district court are listed in Appellant's brief:  Reporters Committee for Freedom of the Press.

B.     <u>Rulings under review</u>

References to the rulings at issue appear in Appellant's brief.

C.     <u>Related cases</u>

This case has not previously been up on appeal before this Court, and counsel for amicus is not aware of any related cases pending before this Court or any other court.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1, the Reporters Committee for Freedom of the Press certifies that it is an unincorporated association of reporters and editors with no parent corporation and no stock.

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ............. i

CORPORATE DISCLOSURE STATEMENT ........................................................ ii

TABLE OF AUTHORITIES ........................................................................ iv

IDENTITY OF AMICUS CURIAE, ITS INTEREST IN THE CASE, AND THE SOURCE OF ITS AUTHORITY TO FILE THIS BRIEF ........................................ 1

RULE 29(a)(4)(E) CERTIFICATION ..................................................... 2

CIRCUIT RULE 29(d) CERTIFICATION .............................................. 2

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................ 3

ARGUMENT ....................................................................................... 6

    I.   *Bivens* remedies for violations of First Amendment newsgathering rights are an indispensable deterrent against such violations and are especially important in light of recent arrests and uses of force against the press covering protests. ........................................................................ 6

    II.  Longstanding precedent supports the continued existence of *Bivens* claims for First Amendment violations. .................................................. 11

    III. While First Amendment claims may present a "new context," *Abbasi* holds only that a reviewing court should carefully consider whether "special factors" preclude relief for a specific claim. ................................................. 15

CONCLUSION .................................................................................. 19

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ..................................... 20

CERTIFICATE OF SERVICE .................................................................. 21

**Cases**

*Berlin Democratic Club v. Rumsfeld*, 410 F. Supp. 144 (D.D.C. 1976) ................13

*\*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) ........................................................................................2, 3, 4, 11, 17

*Black Lives Matter v. Trump*, No. 20-cv-01469-DLF (D.D.C. Dec. 21, 2020) ........2

*Bloem v. Unknown Dep't of Interior Emps.*, 920 F. Supp. 2d 154 (D.D.C. 2013)..13

*Butz v. Economou*, 438 U.S. 478 (1978) ....................................................................3

*Carlson v. Green*, 446 U.S. 14 (1980)...........................................................4, 9, 11

*Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001) ...............................................10

*Daugherty v. Sheer*, 248 F. Supp. 3d 272 (D.D.C. 2017), *rev'd on other grounds*, 891 F.3d 386 (D.C. Cir. 2018)................................................................................13

*Davis v. Passman*, 442 U.S. 228 (1979)...........................................................3, 11

*Dellums v. Powell*, 566 F.2d 167 (D.C. Cir. 1977) .................................................12

*FDIC v. Meyer*, 510 U.S. 471 (1994) ......................................................................10

*Harrison v. Fed. Bureau of Prisons*, 298 F. Supp. 3d 174 (D.D.C. 2018).............13

*Hartley v. Wilfert*, 918 F. Supp. 2d 45 (D.D.C. 2013) ...........................................13

*Haynesworth v. Miller*, 820 F.2d 1245 (D.C. Cir. 1987), *overruled in other part by Hartman v. Moore*, 547 U.S. 250 (2006) ............................................................12

*Hernandez v. Mesa*, 140 S. Ct. 735 (2020) ............................................................18

*Index Newspapers LLC v. City of Portland*, No. 3:20-cv-1035-SI, 2020 WL 4883017 (D. Or. Aug. 20, 2020) ..........................................................................8

*Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817 (9th Cir. 2020).....1, 8

*Kauffman v. Anglo-Am. Sch. of Sofia*, 28 F.3d 1223 (D.C. Cir. 1994)....................13

*Lee v. Barr*, No. 19-cv-2284, 2020 WL 3429465 (D.D.C. June 23, 2020) ...4, 14, 17

*\*Loumiet v. United States*, 948 F.3d 376 (D.C. Cir. 2020) ...............5, 14, 15, 16, 17

*Navab-Safavi v. Broad. Bd. of Governors*, 650 F. Supp. 2d 40 (D.D.C. 2009), *aff'd sub nom.*, *Navab-Safavi v. Glassman*, 637 F.3d 311 (D.C. Cir. 2011)................13

---

[*] Authorities upon which Amicus chiefly relies are marked with asterisks.

*Patterson v. United States*, 999 F. Supp. 2d 300 (D.D.C. 2013)............................13

*Pinson v. U.S. Dep't of Justice*, 246 F. Supp. 3d 211 (D.D.C. 2017) ..............14, 17

*Pope v. Bond*, 641 F. Supp. 489 (D.D.C. 1986) ......................................13

*Reuber v. United States*, 750 F.2d 1039 (D.C. Cir. 1984).....................................12

*Wood v. Moss*, 572 U.S. 744 (2014)......................................................12

*Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017)........................................4, 11, 12, 16, 17

**Statutes**
28 U.S.C. § 2674 (2016)...........................................................................4

**Other Authorities**
Dalton Bennett et al., *The Crackdown Before Trump's Photo Op*, Wash. Post (June 8, 2020), https://perma.cc/F94P-M4M2 ................................................6

Exec. Order No. 13,933, 85 Fed. Reg. 40,081 (June 26, 2020) ...............................7

Marc Tracy and Rachel Abrams, *Police Target Journalists as Trump Blames 'Lamestream Media' for Protests*, N.Y. Times (June 12, 2020), https://perma.cc/P75Z-R7VW ...................................................................9

Rachel Abrams and Katie Robertson, *Australia Asks for Investigation After Police Attack 2 Journalists in U.S.*, N.Y. Times (June 4, 2020), https://perma.cc/4UAG-FZU2............................................................................................6

Sunrise (@sunriseon7), Twitter (June 1, 2020, 6:44 PM), https://bit.ly/3i5pNnF ....7

Testimony of Amelia Brace, "The U.S. Park Police Attack on Peaceful Protesters at Lafayette Square Park," Hr'g Before the H. Comm. on Nat. Res. (June 29, 2020)......................................................................................................7

U.S. Customs and Border Prot., Statement on CBP Response in Portland, Oregon (July 17, 2020), https://perma.cc/N39P-XZBG....................................................7

U.S. Press Freedom Tracker, https://pressfreedomtracker.us/ (last visited Feb. 1, 2021)..........................................................................................................3

Victoria Sanchez, *Australian Journalists 'Brutally Attacked' by U.S. Park Police While Covering DC Protest*, ABC7 WJLA (June 2, 2020), https://perma.cc/DP6U-6WW9............................................................................7

**IDENTITY OF AMICUS CURIAE, ITS INTEREST IN THE CASE, AND THE SOURCE OF ITS AUTHORITY TO FILE THIS BRIEF**

Amicus curiae the Reporters Committee for Freedom of the Press ("Reporters Committee") has obtained consent to file this brief from both parties and therefore may file it pursuant to Federal Rule of Appellate Procedure 29(a)(2) and D.C. Circuit Rule 29(b).

Amicus the Reporters Committee is an unincorporated nonprofit association of reporters and editors dedicated to defending the First Amendment and newsgathering rights of the news media. Founded by journalists and media lawyers in 1970, when the nation's press faced an unprecedented wave of government subpoenas forcing reporters to name confidential sources, the Reporters Committee today serves as a leading voice for the legal interests of journalists and news organizations.

As an organization dedicated to defending the First Amendment and newsgathering rights of journalists, amicus has a powerful interest in ensuring that members of the news media are able to perform their work safely and without fear of retaliation, from law enforcement or otherwise. *See, e.g.*, Br. of Amici Curiae Reporters Comm. for Freedom of the Press and 60 News Media Orgs. in Supp. of Pls.-Appellees, *Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 829 (9th Cir. 2020); Br. of the Reporters Comm. for Freedom of the Press as Amicus Curiae in Supp. of Neither Party, *Black Lives Matter v. Trump*, No. 20-cv-01469-

DLF, at 4–5 (D.D.C. Dec. 21, 2020). Amicus takes no position on the specific claims before the Court but has a strong interest in the continued availability of a right of action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*"), which the district court below suggested may be categorically unavailable for claims based on First Amendment violations. Accordingly, amicus respectfully submits this brief to urge the Court to ensure that its decision in this case not impair *Bivens*' deterrent function by broadly precluding actions for violations of First Amendment newsgathering rights.

## RULE 29(a)(4)(E) CERTIFICATION

In compliance with Federal Rule of Appellate Procedure 29(a)(4)(E), no counsel for a party authored this brief in whole or in part, and no party or counsel for a party made a monetary contribution intended to fund the preparation or submission of this brief. No person other than amicus curiae or its counsel made a monetary contribution to the preparation or submission of this brief.

## CIRCUIT RULE 29(d) CERTIFICATION

Pursuant to D.C. Circuit Rule 29(d), amicus certifies that this brief is necessary to provide the perspective of media organizations and journalists. Amicus has a strong interest in ensuring the availability of *Bivens* remedies for those targeted for their role in the newsgathering process.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Journalists lawfully covering nationwide protests during the last year have been repeatedly injured and arrested by members of law enforcement. *See* U.S. Press Freedom Tracker, https://pressfreedomtracker.us/ (last visited Feb. 1, 2021) (documenting 359 confirmed attacks against journalists, a significant majority by police, and 123 arrests in 2020). In case after case, the affected journalists clearly identified themselves as members of the press, were identifiable as such by any reasonable officer, were compliant with police orders, were positioned away from protesters, and were indisputably engaged in newsgathering protected by the First Amendment. These actions by law enforcement, including federal officers, not only endangered individual journalists but also interfered with or halted reporting on the police response to protests, an acute threat to the freedom of the press and the public's interest in the free flow of information.

These assaults and arrests are exactly the type of "compensable injury to a constitutionally protected interest" where federal courts should "invoke [their] general federal-question jurisdiction" to permit a suit for damages directly against the responsible federal officer. *Davis v. Passman*, 442 U.S. 228, 234 (1979) (quoting *Butz v. Economou*, 438 U.S. 478, 486 (1978)). These interactions are the "most flagrant and patently unjustified sorts of police conduct." *Bivens*, 403 U.S. at 411 (Harlan, J., concurring). They are one-on-one injuries inflicted by

individual officers under color of law against journalists that, "while no less compensable in damages than those inflicted by private parties, are substantially different in kind" than private torts. *Id.* at 409. They are not redressable through alternate forms of relief, given that, while an injunction may deter some of these interactions, there is no way to "obviate the harm" other than damages once they occur. *Id.* at 410. And, while Congress may have authorized actions against the United States for the intentional torts of federal officers under the Federal Tort Claims Act ("FTCA"), *Bivens* remedies "recoverable against individuals" are "a more effective deterrent" against constitutional violations, particularly given that punitive damages are available under *Bivens* but not the FTCA. *Carlson v. Green*, 446 U.S. 14, 21–22 (1980); 28 U.S.C. § 2674 (2020) ("The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable . . . for punitive damages.")

In the instant case, the Court is reviewing the availability of a *Bivens* action in the context of an allegedly retaliatory denial of a security clearance for a federal employee. While amicus takes no position on the specific claim in this case, the district court suggested, in granting Appellee's motion to dismiss, that *Bivens* claims may be broadly unavailable under the First Amendment, citing the Supreme Court's decision in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) ("*Abbasi*"), and recent

precedent by this Court. *See Lee v. Barr*, No. 19-cv-2284, 2020 WL 3429465, at *6 (D.D.C. June 23, 2020) ("The Supreme Court has never held that a *Bivens* remedy is available for First Amendment claims. . . . [A]nd since [*Abbasi*], this Circuit has declined to extend *Bivens* to the First Amendment context[.]" (citing *Loumiet v. United States*, 948 F.3d 376, 382 (D.C. Cir. 2020))). In response, amicus respectfully offers three points for the Court's consideration regarding the availability of *Bivens* remedies for First Amendment violations.

*First*, the availability of *Bivens* relief is an indispensable deterrent against federal officers violating the First Amendment newsgathering rights of the press, and the need for that continued deterrent is underscored by arrests and uses of force against journalists by federal officers in Portland, Oregon, and the District of Columbia, among other locations, during protests this spring and summer.

*Second*, longstanding Supreme Court and D.C. Circuit precedent supports the extension of *Bivens* to First Amendment claims, and there is no jurisprudential support for a categorical preclusion of First Amendment claims from *Bivens*' reach.

*Third*, the Supreme Court in *Abbasi* held only that courts presented with a "new context" must consider whether "special factors" obtain in each individual case counseling against the recognition of a *Bivens* claim. *Abbasi* does not hold that a "new context" is determinative of whether relief is available at all.

For all of these reasons, amicus urges the Court to ensure that any decision in this case preserves the potential availability of *Bivens* remedies in First Amendment contexts, given the role of such relief as an indispensable deterrent against violations of the newsgathering rights of the press.

## ARGUMENT

I.  **Bivens remedies for violations of First Amendment newsgathering rights are an indispensable deterrent against such violations and are especially important in light of recent arrests and uses of force against the press covering protests.**

On June 1, 2020, approximately 25 minutes before the District of Columbia's 7 p.m. curfew went into effect, federal officers in riot gear began dispersing protesters in Lafayette Square with batons, tear gas, rubber bullets, and flash-bang explosives. *See* Dalton Bennett et al., *The Crackdown Before Trump's Photo Op*, Wash. Post (June 8, 2020), https://perma.cc/F94P-M4M2. During the dispersal, an Australian film crew was in the middle of a live report for the morning show Sunrise, airing on Seven Network, one of five major television networks in Australia. *See* Rachel Abrams and Katie Robertson, *Australia Asks for Investigation After Police Attack 2 Journalists in U.S.*, N.Y. Times (June 4, 2020), https://perma.cc/4UAG-FZU2.

Crew member Tim Myers was holding a large news camera in front of his face, and correspondent Amelia Brace was speaking to the camera. Both Brace and Myers were standing to the side of the protest behind a wall—indeed, they

were on a raised piece of concrete off the sidewalk and not among the protesters at all. *See* Sunrise (@sunriseon7), Twitter (June 1, 2020, 6:44 PM), https://bit.ly/3i5p NnF (footage from Brace and Myers); Victoria Sanchez, *Australian Journalists 'Brutally Attacked' by U.S. Park Police While Covering DC Protest*, ABC7 WJLA (June 2, 2020), https://perma.cc/DP6U-6WW9 (footage from ABC7). As can be seen in the footage, *id.*, and as recounted in Brace's testimony at an oversight hearing of the House Natural Resources Committee on the Lafayette Square clearing, U.S. Park Police officers appeared to deliberately target Brace and Myers as they advanced on the crowd to effectuate the dispersal. Testimony of Amelia Brace at 4–5, "The U.S. Park Police Attack on Peaceful Protesters at Lafayette Square Park," Hr'g Before the H. Comm. on Nat. Res. (June 29, 2020). Both Brace and Myers were assaulted by officers as they were covering the advance and as they attempted to escape the stampede. *Id.*

Similar encounters between journalists and federal law enforcement officers occurred during the recent protests in Portland, Oregon, where the United States Marshals Service, Customs and Border Protection, and the Federal Protective Service deployed agents for crowd control duty following the signing of an executive order regarding the protection of federal property. *See* Exec. Order No. 13,933, 85 Fed. Reg. 40,081 (June 26, 2020); U.S. Customs and Border Prot., Statement on CBP Response in Portland, Oregon (July 17, 2020), https://perma.cc/

N39P-XZBG.  These incidents in Portland prompted a district court to grant a preliminary injunction enjoining federal officers in the city from, among other things, "arresting, threatening to arrest, or using physical force directed against any person whom they know or reasonably should know is a Journalist." *See Index Newspapers LLC v. City of Portland*, No. 3:20-cv-1035-SI, 2020 WL 4883017, at *27 (D. Or. Aug. 20, 2020).

On appeal, a divided panel granted an interim administrative stay of the injunction.  A later divided panel, however, then denied the emergency motion for a stay pending appeal and upheld the injunction finding that:  "Because the district court's findings include so many instances in which plaintiffs were standing nowhere near protesters while photographing and observing the Federal Defendants' actions, they provide exceptionally strong evidentiary support for the district court's finding that some of the Federal Defendants were motivated to target journalists in retaliation for plaintiffs' exercise of their First Amendment rights." *Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 829 (9th Cir. 2020).  In response to that "shocking pattern of misconduct," *id.*, even the dissent wrote, "Remarkably, some of the allegations in the complaint regarding 'retaliation' may well support *Bivens* actions and claims of excessive force against individual officers, but that is not what is before us today," *id.* at 851, n.10 (O'Scannlain, J., dissenting).

8

Damages claims against individual federal officers under *Bivens* are a particularly potent deterrent against violations of First Amendment newsgathering protections, such as the right to be free from retaliation for lawful reporting and the right to report on government activity in public. This is always true, but it is especially so in the context of newsgathering during protests, where, as described directly above, journalists have been subjected to the use of force or arrest because of their proximity to protest activity. *See* Marc Tracy and Rachel Abrams, *Police Target Journalists as Trump Blames 'Lamestream Media' for Protests*, N.Y. Times (June 12, 2020), https://perma.cc/P75Z-R7VW ("Journalists are there [at protests] as representatives of the public, and if law enforcement is attacking them, they can't do their job, and that hurts everybody." (quoting Sarah Matthews, Reporters Committee staff attorney)). During the tumult of a protest, foreknowledge by individual officers that the unlawful arrest of or use of force against a journalist may lead to the burden of defending a lawsuit as well as to personal financial jeopardy serves to discipline law enforcement and safeguard the press's constitutionally recognized watchdog role. *See Carlson*, 446 U.S. at 21 ("It is almost axiomatic that the threat of damages has a deterrent effect, surely particularly so when the individual official faces personal financial liability." (internal citation omitted)).

Indeed, the stated rationale behind *Bivens* is both to provide compensation for constitutional violations that would otherwise escape meaningful redress, and to deter such violations. *See id.* at 15 (finding that Congress expressly refused to preclude individual damages remedies because of their greater deterrent effect when enacting FTCA). In cases *declining* to extend *Bivens* remedies to federal agencies or contractors—rather than individual officers—a significant element of the Supreme Court's reasoning was that "the purpose of *Bivens* is to deter *the officer[s]*" in their individual capacities. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 69 (2001) (quoting *FDIC v. Meyer*, 510 U.S. 471, 485 (1994) (emphasis in original)). That is, "[i]f we were to imply a damages action directly against federal agencies, thereby permitting claimants to bypass qualified immunity, there would be no reason for aggrieved parties to bring damages actions against individual officers . . . [and] the deterrent effects of the *Bivens* remedy would be lost." *Meyer*, 510 U.S. at 485. Further, "the threat of litigation and liability will adequately deter federal officers for *Bivens* purposes no matter that they may enjoy qualified immunity, are indemnified by the employing agency or entity, or are acting pursuant to an entity's policy." *Malesko*, 534 U.S. at 70 (internal citations omitted).

Again, amicus takes no position on the specific claims in this case, but the district court's suggestion that *Bivens* remedies may be categorically unavailable

under the First Amendment would eviscerate the deterrent effect of *Bivens* in the newsgathering context and should be rejected. The need for the continued vitality of that deterrent function is only underscored by the numerous violations of such rights during recent protests throughout the country.

## II. Longstanding precedent supports the continued existence of *Bivens* claims for First Amendment violations.

In *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), the Supreme Court clarified the circumstances in which courts should extend *Bivens* to a "new context" beyond the three Supreme Court cases already recognizing an implied constitutional right of action under the Fourth, Fifth, and Eighth Amendments (*Bivens*, *Passman*, and *Carlson*, respectively). But, in operation, the current approach does not differ markedly from the framework established in *Bivens*, where remedies may be inappropriate in the presence of "special factors counseling hesitation in the absence of affirmative action by Congress." *Bivens*, 403 U.S. at 396. With respect to those "special factors," the "necessary inference . . . is that the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 137 S. Ct. at 1857–58. A "special factor" is one that causes "a court to hesitate before answering that question in the affirmative." *Id.*

First Amendment violations of the type described in Part I, *supra*—the arrest or assault of a clearly identifiable journalist lawfully covering a protest—closely

resemble the constitutional violation in *Bivens* itself, an unreasonable search and seizure under the Fourth Amendment. Neither context should prompt a court to "hesitate" before finding that it is "well suited" to adjudicate such a claim. That is, both are discrete instances of law enforcement overreach by individual officers where the availability of a damages remedy would have no effect on "governmental operations systemwide," *Abbasi*, 137 S. Ct. at 1858; where there is no "alternative remedial structure," *id.*; and where there is no reason to doubt the "efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong," *id. See also Wood v. Moss*, 572 U.S. 744, 757 (2014) (assuming without deciding that *Bivens* extends to First Amendment claims).

Crucially, the D.C. Circuit has long recognized the availability of a *Bivens* remedy for First Amendment violations, precisely because no special factors counsel hesitation in many such contexts. This is particularly so in cases of overreach by individual officers in the First Amendment retaliation context. *See Dellums v. Powell*, 566 F.2d 167, 194–96 (D.C. Cir. 1977) (extending *Bivens* to cases of retaliatory arrest by U.S. Capitol Police of protesters exercising First Amendment rights and finding no special factors counseling hesitation); *see also Haynesworth v. Miller*, 820 F.2d 1245, 1257 n.96 (D.C. Cir. 1987) (citing *Dellums* approvingly regarding judicial capability to adjudicate *Bivens* claims in First Amendment contexts), *overruled in other part by Hartman v. Moore*, 547 U.S. 250

(2006); *Reuber v. United States*, 750 F.2d 1039, 1054–61 (D.C. Cir. 1984) (finding that *Bivens* claims encompass retaliatory actions of private actors acting under color of federal law, and noting absence of any special factors counseling otherwise); *but see Kauffman v. Anglo-Am. Sch. of Sofia*, 28 F.3d 1223 (D.C. Cir. 1994) (holding that a private entity with "lesser" links to the federal government is exempt from *Bivens* liability).

The district courts have routinely followed these precedents as well. *See Daugherty v. Sheer*, 248 F. Supp. 3d 272, 283 (D.D.C. 2017), *rev'd on other grounds*, 891 F.3d 386 (D.C. Cir. 2018) (*Bivens* relief available for retaliatory administrative action); *Patterson v. United States*, 999 F. Supp. 2d 300, 307–10 (D.D.C. 2013) (*Bivens* relief available for retaliatory arrest); *Hartley v. Wilfert*, 918 F. Supp. 2d 45, 50–52 (D.D.C. 2013) (*Bivens* relief available for retaliatory property seizure); *Bloem v. Unknown Dep't of Interior Emps.*, 920 F. Supp. 2d 154, 159–61 (D.D.C. 2013) (echoing *Hartley*'s reasoning); *Navab-Safavi v. Broad. Bd. of Governors*, 650 F. Supp. 2d 40, 73–76 (D.D.C. 2009) (*Bivens* relief available for retaliatory contract termination), *aff'd sub nom.*, *Navab-Safavi v. Glassman*, 637 F.3d 311 (D.C. Cir. 2011); *Pope v. Bond*, 641 F. Supp. 489, 494–95 (D.D.C. 1986) (*Bivens* relief available for retaliatory federal workplace actions); *Berlin Democratic Club v. Rumsfeld*, 410 F. Supp. 144, 160–61 (D.D.C. 1976) (*Bivens* relief available for citizens targeted by warrantless surveillance on the basis of

First Amendment activity); *see also Harrison v. Fed. Bureau of Prisons*, 298 F. Supp. 3d 174, 181–82 (D.D.C. 2018) (*Bivens* relief available for prisoner stating First Amendment *Bivens* claim); *Pinson v. U.S. Dep't of Justice*, 246 F. Supp. 3d 211, 219–21 (D.D.C. 2017) (same).

In suggesting that *Bivens* claims may be broadly unavailable in the First Amendment context, the district court cited a post-*Abbasi* First Amendment *Bivens* case in the D.C. Circuit. *See Lee*, 2020 WL 3429465, at *6 (citing *Loumiet v. United States*, 948 F.3d 376 (D.C. Cir. 2020)). That case, however, did not hold that First Amendment *Bivens* claims are categorically precluded following *Abbasi*. Rather, the holding stated that *Bivens* remedies were unavailable only in the case of an allegedly retaliatory administrative enforcement proceeding by the Office of the Comptroller of Currency ("OCC") under the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"). As the basis for this holding, the court found that *Loumiet* presented one special factor counseling hesitation that "st[ood] out": the availability of an "alternative, existing process for protecting [plaintiff's] interests," the FIRREA enforcement scheme itself. 948 F.3d at 382–84 (citation and internal quotes omitted). Among other things, FIRREA enforcement required notice, a hearing with numerous procedural protections for the target of an enforcement action, and the availability of both administrative and judicial review. *Id.* at 384. Further, prevailing parties may recover fees and

expenses under the Equal Access to Justice Act, thus providing "a sword as well as a shield." *Id.* Finally, the court in *Loumiet* emphasized that FIRREA itself "carefully circumscribed" judicial review, and those provisions "come close to foreclosing a *Bivens* action expressly." *Id.*

In short, *Loumiet* involved an exotic claim in an indisputably new context, governed by a comprehensive administrative enforcement scheme, along with specific instructions from Congress on the scope and nature of judicial review. That is a far cry from an individual federal officer subjecting a journalist to arrest or the use of force in violation of established newsgathering rights, where recognizing a *Bivens* claim poses little risk to a carefully calibrated alternative remedial scheme (because there is none with respect to the officer) and where only the possibility of individual liability would serve as an effective deterrent against such violations. Regardless of how the Court addresses the merits in this case, amicus respectfully urges the Court to retain in D.C. Circuit law robust *Bivens* relief when the safety of journalists and newsgathering rights are implicated.

**III. While First Amendment claims may present a "new context," *Abbasi* holds only that a reviewing court should carefully consider whether "special factors" preclude relief for a specific claim.**

Under *Loumiet*, the resolution of Appellant's claim does not require that the Court rule on the availability of *Bivens* actions for all claims under the First Amendment. The Supreme Court's decision in *Abbasi* itself modeled a narrow

approach to assessing the availability of *Bivens* claims in new contexts. In that case, the Supreme Court ruled only that "a *Bivens*-type remedy should not be extended to the claims challenging the confinement conditions imposed on respondents pursuant to the formal policy adopted by the Executive Officials in the wake of the September 11 attacks." *Abbasi*, 137 S. Ct. at 1848. The Supreme Court did not, however, preclude *Bivens* claims in actions challenging detention conditions, or claims under the Fourth or Fifth Amendments in general. Indeed, the Court confirmed that *Bivens* is "well-settled law" in the Fourth Amendment context under which it arose. *Id.*

The opinion in *Loumiet*, which the district court cited in suggesting that First Amendment *Bivens* claims could be categorically denied, merely held that, on the specific facts of that case, *Bivens* relief was inappropriate. *See Loumiet*, 948 F.3d at 385 ("As in *Abbasi*, there is a hard 'balance to be struck' in considering whether to create a damages remedy for the kind of claim that *Loumiet seeks to press here*." (emphasis added) (citing *Abbasi*, 137 S. Ct. at 1863)). That is, while First Amendment claims may present a "new context" on the first step of the *Abbasi* two-step analysis (because *Abbasi* held that lower courts may only recognize an *established* implied cause of action for Fourth, Fifth, and Eighth Amendment claims), this Court, further to the holding in *Abbasi*, then proceeded to the second step of the analysis—whether the special factors presented by a First Amendment

claim *supplemental* to the scheme under FIRREA weighed against recognizing a

*Bivens* claim. *See Loumiet*, 948 F.3d at 382–83 ("We next consider whether

special factors counsel hesitation.").  In short, nothing in *Loumiet* stands for the

proposition that the Supreme Court intended to foreclose *Bivens* relief for *all* First

Amendment claims.  If anything, *Loumiet* is a faithful application of the original

approach in *Bivens*, where the Court recognized that an implied cause of action for

constitutional violations by individual federal officers may, *in context of a specific*

*claim*, create burdens on the legitimate work of the executive, but that, in cases

where *Bivens* relief serves as an important deterrent against such violations that

outweighs the burden, *Bivens* remedies are appropriate. *Compare id.* at 381

("Imposing personal liability on federal officers may promote important interests

in deterring constitutional violations and redressing injuries, but it also 'create[s]

substantial costs' for the officers, the government, and citizens who depend on the

vigorous enforcement of federal law." (citing *Abbasi*, 137 S. Ct. at 1856)), *with*

*Bivens*, 403 U.S. at 396 (finding that the "present case involves no special factors

counseling hesitation in the absence of affirmative action by Congress" and listing

examples of special factors that would).

Finally, in addition to imbuing *Loumiet* with an overbroad sweep, the district

court rejected Appellant's reliance on *Pinson*, a 2017 decision recognizing the

availability of a First Amendment retaliation claim by a federal prisoner. *See* 246

F. Supp. 3d at 218; *Lee*, 2020 WL 3429465, at *6. The court distinguished *Pinson* as predating *Abbasi*, but, again, *Abbasi* did not hold that First Amendment claims are categorically precluded under *Bivens*. Rather, *Abbasi* only put a finer point on how to apply the "special factors" analysis in a "new context." *Cf. Hernandez v. Mesa*, 140 S. Ct. 735, 744 (2020) ("Because petitioners assert claims that arise in a new context, we *must* proceed to the next step and ask whether there are factors that counsel hesitation." (emphasis added)). While amicus does not dispute that First Amendment claims present a new context under *Abbasi*, *Pinson* does not hold otherwise. Rather, *Pinson* reflects the fact that this Court has recognized the availability of *Bivens* relief in the First Amendment retaliation context. *Abbasi* did not abrogate *Pinson*. To the extent it is relevant to the analysis in that case, *Abbasi* holds only that a court considering a "new context" case like *Pinson* is obligated to consider any special factors counseling hesitation. If those factors are not present, nothing in *Abbasi* would preclude a reviewing court from recognizing the availability of *Bivens* relief.

The recent arrests and uses of force against journalists engaged in lawful newsgathering by federal officers are precisely the type of constitutional violation where courts can and should recognize a cause of action under *Bivens*. The lower court's reading of *Abbasi* and *Loumiet* could, if adopted, exempt these claims from *Bivens*' orbit, impairing the safety of journalists and the free flow of newsworthy

information to the public.  Amicus therefore urges this Court to reject such a broad reading and maintain *Bivens* as a viable remedy in cases, such as these, where it is appropriate and necessary.

## CONCLUSION

For all of these reasons, amicus urges the Court to resolve this case in a manner that preserves and protects *Bivens* relief for First Amendment claims.

Respectfully submitted,

/s/
Bruce D. Brown
*Counsel of Record*
Katie Townsend
Gabe Rottman
Mailyn Fidler*
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th Street NW, Suite 1020
Washington, D.C. 20005
Tel: (202) 795-9300
Fax: (202) 795-9310
bbrown@rcfp.org
* *Of counsel*

Dated:        February 1, 2021

# CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

I certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a) because it contains 3,922 words, excluding the parts of the brief exempted under Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1).

I further certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Bruce D. Brown*
Bruce D. Brown
Counsel of Record for Amicus Curiae

Dated:       February 1, 2021

# CERTIFICATE OF SERVICE

I certify that on February 1, 2021, I electronically filed the foregoing brief with the United States Court of Appeals for the District of Columbia Circuit using the CM/ECF system. Plaintiff-Appellant and Defendant-Appellee are registered CM/ECF users, and service upon them will be accomplished by the appellate CM/ECF system.

*/s/ Bruce D. Brown*
Bruce D. Brown
Counsel of Record for Amicus Curiae

Dated: February 1, 2021